The opinion of the Court was delivered by
Dunkin, Ch.
When John Laurens, in November, 1851, agreed to sell the Mepkin plantation to the defendant, Edward S. Lucas, he had been about six years in the possession of the plantation. He had paid thirty-seven thousand dollars for it to the executor of his mother, Mrs. Eliza Laurens. This sum is admitted to have been the full value of the premises, and seven thousand dollars more than the price stipulated to be paid by the defendant. Under these circumstances the agreement was made, for the specific performance of which these proceedings were instituted. The objections of the defendant are set forth in the grounds of appeal from the Chancellor’s decree. Before adverting to them, it may be proper to state the general principle of this Court in carrying such agreements into execution. A purchaser cannot be compelled to take a doubtful title. But on this subject the Court acts on moral certainty, and a purchaser will not be permitted to object to a title on account of abare possibility. This is illustrated by Lyddall vs. Weston, 2 Atk. 19, where in the original grant from the Crown there was a reservation of tin, lead and all royal mines. Lord Hardwicke decreed a specific performance against the purchaser on the ground of the great improbability of the existence of such mines as well as the want of a right of entry. And in another case referred to by Mr. Sugden, p. 519, a man articled for the purchase of an estate with some valuable mines, which were under a common, and he objected to complete his purchase because others who had a right of common might bring actions against him for sinking shafts to work his mines, Lord Eldon decreed *223 a specific performance, after showing the improbability of any obstruction from the commoners. The objections of the defendant seem to be first that the legal title was not in the plaintiff; and second, that if he had the legal title, it is so incumbered with charges or subject to claims, that the purchaser should not be compelled to accept it. The title in Mrs. Laurens is not questioned, and the devise to the plaintiff is in direct terms. It is objected that the devise is after payment of debts. “ Whatever doubts may once have existed,” says Mr. Jarman, “ whether these words rendered the devise contingent until the debts are paid, it is now well established that such a devise confers an immediate vested interest, the words of apparent postponement being considered only as creating a charge,” 1 Jarm. 743. A nd Barnardiston vs. Carter, 1 P. W. 505, not only sustains this position, but affirms that the receipt by the executor of funds sufficient to pay the debts, relieves the estate of the devisee from the charge. Then it is said that the execution of bonds to the other legatees was also a condition precedent to the vesting of the devise, or was, at least a charge binding on the estate in the hands of the devisee or others claiming under him with notice. The reasoning of the decree shews very satisfactorily that the character of this condition did not postpone the vesting of the estate. But suppose the plaintiff, in order to comply with the terms of the will, or because he was satisfied with the condition of the estate, had executed the bonds and mortgage as directed, and had thus created (if it were possible) a more perfect charge upon the estate than the terms of the devise created, and the plaintiff had been afterwards compelled to pay the full, price of the estate to the creditors of the testatrix, can it be doubted that this Court would relieve against the bonds thus given to the legatees ? The extreme improbability of any claim by the legatees arising out of this charge would in itself warrant the Court in regarding the objection as no obstacle to a decree for specific performance.
But this Court is also of opinion with the Chancellor, that *224 the plain tiff is entitled to the position of a purchaser of the plantation for valuable consideration; and this view is, perhaps, more in accordance with the ultimate intentions of the testatrix, as well as the subsequent conduct of the parties.
The will of the testatrix was executed in August, 1838. The several codicils extend to November, 1842. Her wishes in regard to Mepkin,fand the disposition of the stipulated value remained substantially the same, but the practicability of gratifying them had become doubtful. In the fourth codicil, executed 28 October, 1842, it is provided that, if her grand-son, John Laurens, “ should be minded to accept the devise of Mepkin plantation ” at the value fixed by the will, he should execute bonds for specific sums to Mrs. Ingraham and Mrs. Ramsay, daughters of testatrix, and to certain of her grand-children. But if he should decline to take the plantation on these terms testatrix then directs that her son Edward R. Laurens “ should have the refusal of.the plantation” at the same valuation, and, upon his acceptance, should execute certain bonds to the other legatees as therein specified; and, if he should decline, it is then directed that her daughter, Mrs. Ingraham, should have the refusal of the plantation at the same valuation, upon giving bonds as therein specified to the other legatees; and if Mrs. In-graham should decline to take the plantation at this valuation and on these conditions, the testatrix directs that then “ the said plantation shall be sold by her executor, at private or public sale, upon such condition for cash or credit as he may deem most advantageous.” She then directs the disposition of the surplus of the sales, after the payment of her just debts and the legacies previously given; but by the next succeeding clause it is declared that if the fund before specifically provided for the payment of her debts and satisfaction of her legacies should prove insufficient, then that “ the residue thereof should be paid out of the proceeds of Mepkin, whether taken at the said valuation or sold as aforesaid.” Although the plaintiff had been let into possession of Mepkin, when he became of age, he had never executed bonds to the legatees, probably in consequence *225 of the uncertain condition of the estate of the testatrix. But for some time prior to 24 April. 1851, it was well ascertained that the entire proceeds of Mepkin would be absorbed in the payment of the debts of the testatrix. On that day the executor of Mrs. Laurens executed to the plaintiff a conveyance in fee of the premises, acknowledging the receipt from him of the sum of thirty-seven thousand dollars ; which consideration money the parties agreed was disbursed by the executor in the payment of •the debts of the testatrix. This unquestionably constituted a sale of the plantation; and, if the executor had authority to sell, this deed operated as a complete transfer of the title of the testatrix. The proposition, sufficiently plain, may perhaps be illustrated by supposing that the plaintiff had paid nothing to the executor, and that the executor, finding the proceeds of Mepkin were demanded for the exigencies of the estate, had, on 24 April, 1851, sold the premises to a third person for thirty-seven thousand dollars, had executed to him the proper conveyance, and applied the purchase money to the payment of the testatrix’ debts, what infirmity could be detected in the title of the purchaser? And why should not the plaintiff occupy this position ? It has been rather faintly suggested that the executor had only authority to sell after the other parties had declined to take the plantation at the valuation and upon the conditions prescribed by the will. But no form of refusal is prescribed; and under the circumstances it may very reasonably be inferred from their silence and acquiescence that they had declined so bootless a privilege. The only objection which seemed to be seriously urged was, that the testatrix, in her life time, had become o;ab of the sureties of a public officer, and then it is suggested that in the administration of the fund by the executor he had not marshalled the assets according to law. During the life time of the testatrix no lien existed on her estate. By her will the executor was authorised to sell Mepkin plantation and make a valid title to the purchaser. It is difficult to maintain that the death of the testatrix, or the provisions of the Act of 1789, created any lien on the estate. An executor thus *226 authorised has the same power as the testatrix. If Mrs. Lau-rens had been alive in April, 1851, her right to sell Mepkin for a valuable consideration and her capacity to make a perfect title are not questioned. She might have applied the proceeds to the payment of her debts, or in any other manner. The title of the purchaser would be in no manner dependant upon the mode in which she appropriated the funds. Unless an executor with authority to sell has the same power, no purchaser either of lands or negroes from an executor would be safe in his title until his administration had been closed and the regularity of his accounts judicially established.
This Court concurs with the Chancellor, that the purchaser from the executor was not bound to see to the proper application of the money paid for Mepkin; and they are also of opinion that the plaintiff stands in an equally favorable position with any third person who might have purchased from the executor.
It is ordered and decreed that the appeal be dismissed, and the decree of the Circuit Court affirmed.
Johnston and Wardlaw, CC., concurred.
Dargan, Ch., absent at the hearing.

Appeal dismissed.